### BANK OF WRIGHTSVILLE *v.* MERCHANTS AND FARMERS BANK OF MILLEDGEVILLE.

1. In a suit against a guarantor, no formal plea of payment is necessary to warrant the admission of testimony tending to establish that the liability does not exist inasmuch as the principal debtor has paid the debt guaranteed. This is particularly true where the petition alleges that the principal has not paid the debt and the answer denies this allegation.
2. Where the plaintiff contends that the guarantor has not paid a draft covered by the terms of the guaranty, and the defendant insists that such draft was withdrawn and the amount thereof included in another draft for a larger sum, which was paid by a particular check, which was itself paid, the case does not involve the doctrine of the application of payments under the Civil Code, § 3722 ; and there was no error hurtful to the plaintiff in the charge on this subject.
3. Even if the charge as to the elements to be considered by the jury in determining the weight to be given evidence was incorrect, it nowhere appears that it was harmful to the plaintiff ; for under the record it may have been helpful to him and harmful to the opposite party.
4. There were no errors of law ; and the verdict was sustained by the evidence.

Argued November 25, — Decided December 14, 1903.

Action on contract.    Before Judge Lewis.    Baldwin superior court.    January 27, 1903.

The Bank of Wrightsville sued the Merchants & Farmers Bank of Millegeville as guarantor, for an alleged indebtedness of George C. Smith, basing the action on a letter to the plaintiff, signed by the defendant's cashier and dated August 23, 1900, the material part of which was as follows:    "As Mr. George C. Smith of this city will have a cotton buyer in your city the coming season, we beg to state that any drafts for cotton drawn by Mr. E. W. Beck with B/L attached will be promptly paid by Mr. Smith, and we will remit you the same day in Savannah at par.    These drafts must come to us direct here, or, if you wish to send them to Savannah, direct them sent either to  .  .  Citizens Bank or" other

banks named, "requesting them to send the drafts direct to us." It appears from the record that seven drafts by Beck on Smith, in favor of the plaintiff, dated January 8, 1901, for amounts aggregating $11,475.71, which represented advances made by the plaintiff to Beck for the purchase of cotton, and to each of which a bill of lading for cotton was attached, were forwarded by the plaintiff to the Citizens Bank of Savannah, and by that bank to the defendant, for collection. Smith was ill and did not pay the drafts on presentation, and they were protested for non-payment and returned. This suit was for $1,575.42, alleged to be a balance due after crediting Smith with payments made by him. The defendant in its answer denied indebtedness, and at the trial contended that Smith had paid the full amount due by him. There was no formal plea of payment. From the evidence it appeared, that after the drafts had been protested and returned to the Citizens Bank of Savannah, that bank returned the drafts to the plaintiff, but, in pursuance of instructions from the plaintiff's cashier, detached the bills of lading and held them, awaiting further instructions from the plaintiff, except one for 31 bales, and afterwards attached these detached bills of lading to drafts or checks of Smith on the National Bank of Savannah, subsequently paid, which were for the aggregate amount of six of the seven original drafts, and which Smith had, on January 14, 1901, sent to the plaintiff to take up the bills of lading represented by these six drafts.

Smith testified that after these six drafts were paid, the remaining one of the original drafts, to which the bill of lading for 31 bales was attached, and which was for $1,466.48, was included in a larger draft, which was paid. His explanation as to this draft was as follows: The cotton was to be exported in even lots of 50 bales each, and his instructions were not to draw for less than 50 bales; so he sent back to Beck the invoice for the 31 bales and requested Beck to add the bales necessary to make the lot 50 bales, which was done; and for these 50 bales Beck made a draft on him in favor of the plaintiff, for $2,306.16, in lieu of the original draft for $1,446.48. This draft for $2,306.16 was paid on January 18, 1901. "When this . . draft went to the Bank of Wrightsville, they would not apply it to the draft I took up for that 50 bales of cotton. I had bought that paper, that bill of lading, and the transaction closed itself. . . When I sent this draft for $2,306.16,

it had a bill of lading attached for 50 bales of cotton. That represented 19 bales more than were in those original seven drafts. I gave no directions as to how that $2,306.16 should be applied, because when you buy a bill of lading you buy the draft." Cook, the plaintiff's cashier, testified: "This draft covers 50 bales of cotton and was drawn by Smith's agent, E. W. Beck, and was applied to his (Smith's) general account. He had made an account with us subsequent to the protest of these checks. He continued to purchase cotton some little time after these original drafts were drawn. . . The draft of $2,306.16 went to the credit of the general account of George C. Smith. After we had given him credit for this amount, he still owed us fifteen hundred and odd dollars. . . I applied this draft . . to Mr. Smith's general account. At that time he owed $2,306.16 and fifteen hundred and odd dollars besides." "He owes a balance of something over $1,500. . . I do not know the exact amount." The plaintiff introduced a letter from Smith to Cook, of May 9, 1901, acknowledging receipt of a statement of account; and one dated August 19, 1901, to the effect that he "accepted, as settlement of the old matter," although he did not think himself liable, a proposition made by Cook, and that Cook could draw on him for $25, September 5th, attaching to the draft a memorandum that this agreement was entered into to get the matter settled, and then draw for $25 each following week, and he (Smith) would send Cook a note for $900, due November 1. Cook testified that no payment was made under the proposition referred to in this letter. Smith testified, in rebuttal: "These letters of mine, that have been read, to the Bank of Wrightsville, relate to a subsequent account in which Mr. Beck and I were mixed up. . . It had nothing whatever to do with these seven drafts sued upon. . . On the 18th day of January, when I paid this last draft, I did not owe the Bank of Wrightsville a cent as far as I know."

The trial resulted in a verdict for the defendant. The plaintiff's motion for a new trial was overruled, and it excepted. The motion was on the grounds: (1–3) The verdict is contrary to law and the evidence. (4) The court erred in allowing George C. Smith to testify as to payment of the drafts in question (as set out in this ground), over the objection that the defendant had not pleaded payment. (5) The court erred in not allowing the plaintiff to in-

troduce in evidence, as an admission on the part of Smith through his authorized agent, a certificate of E. W. Beck (set out), dated April 13, 1901, as to indebtedness of Smith to the plaintiff. (6) The court charged the jury as follows : " The legal effect of this assurance in this letter was to create an implied obligation on the part of the defendant to the plaintiff, under certain contingencies," etc. This was error, because the letter was not an "implied" obligation, but was an express guaranty. (7) The court charged : " Was there in this letter an assurance on the part of these parties, the defendants in this case, that these drafts would be paid, if drawn as directed in this letter ?" This was error, because it was the province of the court to construe the letter, and because the court, having already construed it, qualified and withdrew his construction of it by submitting to the jury this question. (8) The exception taken in the preceding ground is taken in the 8th ground, as to another part of the charge of the court. (9) The court erred in charging that if the jury believed from the evidence that there was a payment of the drafts or of the indebtedness represented by them, by Smith or any one else, the defendant would not be liable. This was not warranted by the pleadings, no plea of payment having been filed ; and it was based on incompetent evidence. (10) The court erred in charging as to the application of payments, as set out in the following opinion. (11). The court erred in charging : " In order to ascertain the preponderance of the evidence on any issue, you will consider [the witnesses's] intelligence, or want of intelligence."

*Daley & Bussey* and *J. L. Kent*, for plaintiff.
*Allen & Pottle*, for defendant.

LAMAR, J. If the defendant had offered evidence to show that it had paid the amount due by it under the guaranty, it would have been inadmissible, there being no plea of payment filed. But such was not the case. The evidence was offered to contradict a material contention of the plaintiff that " said Smith has failed and refused, and continues to fail and refuse payment of said balance due." It was not evidence in support of a plea of confession of original liability, and avoidance because of subsequent payment, but went to establish the defendant's contention that it was not liable as guarantor, because of the fact that the principal,

Smith, had settled the debt.    The answer distinctly raises the issue, and the evidence in support thereof was relevant and admissible.

The charge of the court in reference to the duty of the plaintiff to apply the $2,306 was not such as to require a new trial.    This was not a case in which the ordinary doctrine of the application of payments controlled.    The defendant insisted that the $2,306 draft, with the bill of lading for fifty bales of cotton, was intended and understood by all the parties to include the amount formerly due on the $1,446, draft with the bill of lading for thirty-one bales of cotton.    And hence, though probably inaccurate, it was not reversible error to charge that "if you believe that the draft of $2,306 covered the amount of a draft for $1,446, and the Bank of Wrightsville knew that this draft covered this amount, or was intended by Smith to cover this amount, or ought to have known it by the exercise of ordinary diligence, and if Smith finally paid that draft, then I charge you that the Bank of Wrightsville could not have applied the payment of $2,306 to any general account Smith might have been due the Bank of Wrightsville, and the Merchants Bank would not be bound by any such application of payment, if such was made."    The charge must be construed in the light of the whole case, and in view of the fact that this is a suit, not against Smith, but against the guarantor.    The $2,306 was the proceeds of a draft for that sum, and had to be applied to the debt represented by the draft.    If the $1,446 was included therein, then by operation of law it also was satisfied and discharged so far as the guarantor was concerned, regardless of any actual or attempted application of the proceeds to any balance on open account or otherwise.

Beck's certificate of the amount of Smith's indebtedness to the Bank of Wrightsville was secondary evidence, not binding on the Merchants Bank.    Beck was not the agent of the defendant, which had the right to cross-examine him.

It is not made to appear by the record how the plaintiff was injured by the charge of the court instructing the jury that they might consider the intelligence of the witnesses, in weighing the testimony.    For aught that appears, it may have been helpful to the plaintiff and hurtful to the defendant.    At any rate the plaintiff fails to show that the charge, if erroneous, was harmful.

The evidence for the plaintiff was indefinite, even as to the amount it claimed to be due, dealing in round numbers, and saying that the balance was about fifteen hundred and odd dollars. The guarantor was not liable for any indebtedness on account, but only for drafts with bills of lading attached. But passing that point, and irrespective of the defendant's contention that the verdict was demanded by the evidence because of plaintiff's failure to prove that it had sued Smith to insolvency, we find no error in the rulings or charge of the court. The evidence for the defendant was amply sufficient to warrant the verdict; and the judgment is

*Affirmed. All the Justices concur.*